UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHNNY A. THOMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 2:20-cv-00043<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff Johnny A. Thompson filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.) Before the Court is Thompson's motion for judgment on the administrative record (Doc. No. 17), to which the Commissioner has responded in opposition (Doc. No. 19). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Thompson's motion for judgment on the administrative record be denied and the Commissioner's decision be affirmed.

I. **Background**

   A. **Thompson's DIB and SSI Applications**

Thompson applied for DIB and SSI on July 10, 2018, alleging that he has been disabled and unable to work since June 30, 2018, as a result of back pain, anxiety, depression, and high blood pressure. (AR 71, 85.[1]) The Commissioner denied Thompson's applications initially and on reconsideration. (AR 98, 99, 134, 135.) At Thompson's request, an administrative law judge (ALJ) held a hearing regarding his applications on September 9, 2019. (AR 39–69, 153–54.) Thompson appeared with counsel and testified. (AR 41, 42–63.) The ALJ also heard testimony from a vocational expert. (AR 63–68.)

   B. **The ALJ's Findings**

On October 29, 2019, the ALJ issued a written decision finding that Thompson was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claims for DIB and SSI. (AR 23–34.) The ALJ made the following enumerated findings:

   1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

   2. The claimant has not engaged in substantial gainful activity since June 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*   \*   \*

   3. The claimant has the following severe impairments: Essential hypertension; Degenerative disc disease; Curvature of spine; Recurrent arrhythmias; Loss of visual efficiency; Anxiety; and Depression (20 CFR 404.1520(c) and 416.920(c)).

\*   \*   \*

   4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

---

[1] The transcript of the administrative record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently, and stand, walk, and sit for six hours in an eight-hour workday, with no more than occasional climbing of ramps and stairs, no more than occasional climbing of ladders, ropes, and scaffolds, and no more than occasional balancing, stooping, kneeling, crouching, and crawling. He is limited to gross vision. He is limited to simple and detailed tasks. He can have no more than occasional contact with co-workers, supervisors, and the public. He can work in an environment where changes are infrequently and gradually introduced.

\* \* \*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7.  The claimant was born on August 25, 1970 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 25–34.) The Social Security Appeals Council denied Thompson's request for review on July 5, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–7.)

### C. Appeal Under 42 U.S.C. § 405(g)

Thompson filed this action for review of the ALJ's decision on July 21, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Thompson argues that the ALJ failed to properly evaluate medical opinions from his treating physician and from a consulting physician in violation of 20 C.F.R. § 404.1527. (Doc. No. 17-1.) The Commissioner responds that § 404.1527 has been rescinded and does not apply to applications, like Thompson's, that were filed after March 27, 2017. (Doc. No. 19.) The Commissioner further argues that the ALJ properly evaluated the medical opinions in the administrative record in accordance with applicable SSA regulations. (*Id.*) Thompson did not file an optional reply.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as

4

Case 2:20-cv-00043   Document 21   Filed 08/11/21   Page 4 of 14 PageID #: 549

adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment

or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [his] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first

6

four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Analysis

#### A. Applicable Regulations

Thompson's only argument on appeal is that the ALJ failed to follow 20 C.F.R. § 404.1527 when analyzing the medical evidence in the administrative record. (Doc. No. 17-1.) Specifically, Thompson argues that the ALJ erred by discounting the functional limitations in a medical source statement submitted by Thompson's treating physician Dr. C. Gray Smith and by incorporating into Thompson's RFC the high end of a sitting limitation range included in Dr. Stephen K. Goewey's consulting medical opinion.[2] (Doc. No. 17-1.)

Section 404.1527—which applies to DIB claims and is titled "Evaluating opinion evidence for claims filed before March 27, 2017[,]" 20 C.F.R. § 404.1527—generally requires ALJs to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not . . .[,]" *id.* § 404.1527(c)(1), and specifically requires ALJs to give controlling weight to a medical opinion from the claimant's treating

---

[2] The Court specifically ordered Thompson to include a statement of asserted administrative errors in his memorandum of law in support of his motion for judgment on the administrative record. (Doc. No. 16.) The Court warned Thompson that it would "consider only those errors specifically identified in" that section of his brief. (*Id.* at PageID# 511.) The only errors Thompson listed in his statement of errors relate to the ALJ's evaluation of Dr. Smith's and Dr. Goewey's opinions. (Doc. No. 17-1.) It is not clear from the argument section of Thompson's brief if he also seeks to challenge the ALJ's evaluation of Thompson's own testimony regarding his pain. However, in light of the Court's order to Thompson and warning that it would only consider errors included in the statement of errors, the Court will limit its analysis to the two errors asserted.

physician if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," *id.* § 404.1527(c)(2). Other factors considered in deciding what weight to give a medical opinion under this regulation include supportability, consistency, the medical source's specialization, and other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(3)–(6). Section 416.927 provides the same requirements for evaluating medical opinions submitted in support of SSI claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927(c)(1)–(6).

The SSA announced in January 2017 that it was revising these regulations effective March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017), *amended by* 82 Fed. Reg. 15132-01 (Mar. 27, 2017). Because Thompson did not file his DIB and SSI applications until July 10, 2018—more than a year after the SSA's rescission of §§ 404.1527 and 416.927 took effect—these regulations do not apply to his claims. Instead, as explained in §§ 404.1527 and 416.927, Thompson's claims fall under the regulations set forth in §§ 404.1520c and 416.920c. *See* 20 C.F.R. §§ 404.1527, 416.927.

Sections 404.1520c and 416.920c eliminate deference to treating physicians' opinions by providing that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness of" all medical opinions based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to

evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[3] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

Thompson has not argued that the ALJ violated the applicable regulations. The Court could therefore end its analysis here and find that Thompson has not shown that the ALJ's decision lacks

---

[3] This differs from §§ 404.1527 and 416.927, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

the support of substantial evidence. However, because the Commissioner has argued that the ALJ's decision complies with the relevant regulations, the Court will continue its analysis.

### B. The ALJ's Analysis of Dr. Smith's Medical Source Statement

Dr. Smith—who treated Thompson periodically from 1989, when Thompson was 19 years old, to 2018, when Thompson filed the DIB and SSI applications at issue in this action (AR 342–46)—submitted a medical source statement dated July 30, 2019, regarding Thompson's residual functional capacity (AR 435). Dr. Smith listed Thompson's diagnosis as "[l]ow back pain" and identified Thompson's primary symptoms as "[b]ack [and] . . . leg pain." (AR 435.) Asked how often Thompson's symptoms are "severe enough to interfere with attention [and] concentration required to perform simple work-related tasks during an 8-hour day[,]" Dr. Smith checked a box labeled "[m]ore than 20%[.]" (*Id.*) Dr. Smith also checked a box indicating that Thompson would "need to take unscheduled breaks during an 8-hour work day beyond the normal 15-minute morning and afternoon breaks and the 30-minute/1-hour lunch break[.]" (*Id.*) Asked to provide his opinion about Thompson's functional limitations in "an 8-hour per day/5 day per week" work environment, Dr. Smith checked boxes indicating that Thompson could stand or walk for "[l]ess than 2 hours"; could sit for "[a]t least 2 hours but less than 4 hours"; "[m]ust . . . periodically alternate sitting and standing to relieve pain"; and could "[n]ever" lift "50 or more pounds[,]" "20 pounds[,]" "10 pounds[,]" or "[l]ess than 10 pounds[.]" (*Id.*) Dr. Smith checked a box indicating that Thompson would "need to periodically lie down due to pain, fatigue, or other impairments during a normal 8-hour work day" and checked a box indicating that he expected all of the indicated limitations "to last 12 or more consecutive months[.]" (*Id.*)

The ALJ analyzed Dr. Smith's medical source statement as follows:

> Dr. Smith, MD completed a medical source statement of residual functional capacity in July 2019. (Exhibit 9F). He opined that the claimant's low back pain interfered with attention and concentration more than twenty percent of the time,

and would require the claimant to take unscheduled breaks. Dr. Smith further opined that the claimant could stand and walk for less than two hours, and sit for at least two but less than four hours in an eight-hour workday. He noted that the claimant would need to periodically alternate between sitting and standing to relieve pain, periodically lie down, and could never lift or carry less than ten pounds. Although Dr. Smith is the claimant's treating physician, the undersigned does not find his opinion to be persuasive, because it is not consistent with, or supported by, his treatment records or the overall evidence of record, specifically, his assertion that the claimant could never lift or carry less than ten pounds.

(AR 31–32.)

The Court finds that the ALJ applied the correct legal standard to analyze Dr. Smith's medical source statement and explained how he considered the supportability and consistency factors as required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). The supportability factor concerns the relevance of the objective medical evidence and supporting explanations of his opinion that Dr. Smith presented. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As the Commissioner argues, Dr. Smith did not offer any explanation for his opined limitations other then his general diagnosis of back pain and did not identify any objective medical findings supporting those limitations. Thompson points to treatment records from Dr. Smith showing that he asked Dr. Smith for a cortisone shot for his arthritis pain on February 3, 2017 (AR 343), and complained to Dr. Smith about elevated blood pressure on May 24, 2018 (AR 342), but these records pre-date Thompson's alleged disability onset date of June 30, 2018, and do not support his claim.

The consistency factor addresses whether a medical opinion is consistent with other medical and nonmedical evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found that Dr. Smith's opinions were "not consistent with . . . his treatment records or the overall evidence of record, specifically, his assertion hat [Thompson] could never lift or carry less than ten pounds" because of his back and leg pain. (AR 32.) Thompson has not pointed to any medical or other record evidence that contradicts the ALJ's finding.

The Court therefore finds that Thompson has not shown that the ALJ applied the wrong legal standard or that the ALJ's findings regarding Dr. Smith's medical source statement lack the support of substantial evidence.

### C. The ALJ's Analysis of Dr. Goewey's Medical Opinion

Dr. Goewey, a consulting physician, examined Thompson on October 8, 2018, in connection with Thompson's DIB and SSI applications. (AR 395–97.) Dr. Goewey noted the following musculoskeletal findings:

> The claimant had full range of motion of his cervical spine. Dorsolumbar spine flexion 60 degrees, extension and side bending is full. Straight leg raising test is positive on the right. Right lateral flexion is to 20 degrees. The claimant has full range of motion on his shoulders, elbows, forearms, wrists as well as hands and finger evaluation.
>
> Lower extremity evaluation reveals right hip flexion 70 degrees, left hip flexion is full, full extension bilaterally, internal and external rotation is 20 degrees on the right and full on left. Abduction is full. Adduction is 10 degrees on right and full on left.
>
> Right knee flexion is 100 degrees with full extension. Left knee flexion 30 degrees with full extension. Full range of motion on foot and ankle evaluation.

(AR 396–97.) Based on this examination, Dr. Goewey opined, among other things, that Thompson could "sit between four and six hours daily[.]" (AR 397.)

The ALJ analyzed Dr. Goewey's medical opinion as follows:

> Dr. Goewey, MD consultatively examined the claimant in October 2018. (Exhibit 5F). He diagnosed the claimant with dorsalgia with radiculopathy, pending lumbosacral X-ray, and hypertension with palpitation history, controlled and asymptomatic. Dr. Goewey opined that the claimant could lift and carry at least twenty pounds occasionally, sit between four and six hours daily, and stand and walk at least two to three hours daily. The undersigned finds Dr. Goewey's opinion to be persuasive, because it is consistent with, and supported by, the medical evidence of record at the time that it was rendered; however, the undersigned notes that the claimant's more recent treatment records showed improvement in his hypertension and arrhythmia, which resulted in the less restrictive limitations in the residual functional capacity above. (Exhibits 7F, 8F, and 12F).

(AR 31.)

Thompson argues that the ALJ erred in evaluating Dr. Goewey's opinion "when he decided to take the high end of 6 hours sitting instead of the low end of 4 hours sitting" in formulating Thompson's RFC. (Doc. No. 17-1, PageID# 520 (emphasis omitted).) Thompson has not cited any legal authority to support this argument. The Commissioner argues that the ALJ properly considered Dr. Goewey's opinion under 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) and properly incorporated sitting for six hours into Thompson's RFC because SSA regulations define a claimant's RFC as "the most an individual can do and not the least." (Doc. No. 19, PageID# 539 (citing 20 C.F.R. §§ 404.1545, 416.945).)

The Court finds that the ALJ applied the correct legal standard to analyze Dr. Goewey's consulting medical opinion and explained how he considered the supportability and consistency factors as required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). The ALJ also explained that he incorporated "less restrictive limitations" in Thompson's RFC based on "more recent treatment records show[ing] improvement in [Thompson's] hypertension and arrhythmia[.]" (AR 31.) Accordingly, the Court finds that Thompson has not shown that the ALJ applied the wrong legal standard or that the ALJ's findings regarding Dr. Goewey's consulting medical opinion lack the support of substantial evidence.

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Thompson's motion for judgment on the administrative record (Doc. No. 17) be DENIED and that the Commissioner's final decision be AFFIRMED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party

who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 11th day of August, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge